# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 16, 1910.

ROTLOFF, ETC.,
VS.
OERTEL ET AL.

*Emil Budnitz* for plaintiff.
*O'Mara & Angelmier* for defendants.

NILES, J.—

There seems to be no binding authority in Maryland upon the points presented by this case, and, to a certain extent, this decision depends rather upon what is conceived to be the general spirit of our modern law in England and America, than upon Maryland authority.

In every contract of service there is an implied stipulation that the servant will act with good faith towards his master. What good faith requires in any given case must be determined by its particular circumstances.

The general rule is that no employee has the right to impart to a rival employer the secrets of the business learned by him in the course of his employment.

But the names of the customers of a dry goods store, or of a general insurance agency, may not constitute a secret of the business, while the customers upon a milk route, or the names of persons upon subscription lists of different kinds, may be such a trade secret, and the knowledge of these customers are, and their habits and requirements in regard to the particular thing sold to them, may constitute in fact the entire value of the business.

Such a business as is last described is that carried on by the plaintiff. She employs solicitors to procure for her subscribers to publications to be delivered weekly by her to them at their homes and there paid for. Such subscribers, as a practical matter, can stop taking the publications when they please, but some of them receive coupons which can be exchanged for premiums after a certain number of publications are taken, and all of them are hoped and expected to continue subscribers for some time.

The plaintiff, therefore, pays her solicitors for each subscriber more than the profit ordinarily made from that particular individual up to the time when payment is made to the solicitor, in the expectation that the new customer will continue upon the list until the plaintiff shall have ultimately made as profit more than the solicitor's fee.

The plaintiff and her predecessors in business have secured a large number of such subscribers, and these are now divided into certain "routes" and served by "collectors," who retain for their services a commission on the amounts paid them by these subscribers on their route.

To these "collectors" are assigned such names of new subscribers as are secured by the solicitors and thus a "route" becomes a valuable thing to the plaintiff and a source of regular income to a collector in her employ.

The plaintiff never comes in contact with her customers, and deals with them only by her solicitors and collectors.

The defendant, Oertel, was such a "collector" as above described, and the question, a negative answer to which is decisive of this case, is, can such a collector, being the only person known to the customers and having by reason of his service with his employer secured the friendly feeling of his customers, lawfully leave his employer, accept a position with his employer's rival in business, and go over his old route, attempting to persuade the people upon that route to discontinue business with his old employer, and to continue carrying on their business dealings with him, their old agent and collector, but who is now acting for a different principal?

I am clear that the answer should be "No;" that this would not be fair; that the route or list does not belong to the agent, and that it is property of the principal which the principal has paid for, possibly to the very agent who may be trying to carry it away.

The defendant Netzer, Oertel's present employer, confessed on the stand that he knew that such proceedings as those taken by him in this case were not right, but that he employed the means complained of to secure business, because he thought it was legal, and he knew it was usual, and he feared that if he did not use these means he could not continue a profitable business.

It would seem then full time that property of this particular class should be recognized and preserved from being destroyed by unscrupulous agents and employers, who are willing to make use of such agents, and the effective action of the law to this purpose will, without doubt, redound to the ultimate advantage, both of employers and employed.

Of course the agent must be free to terminate his employment, and be free to carry on the same business for the benefit of another employer; and any such employer must have the general right to canvass among the customers of his rivals.

But both these rights must be exercised in subordination to the rule, that the servant shall not use unfairly the opportunities which his service gives him of obtaining information.

It follows that, in my opinion, the "route" of the defendant, Oertel, must be considered as in the nature of a trade secret not to be revealed by Oertel to plaintiff's business rival either while he is still in the service of the plaintiff, or until a reasonable time has elapsed after he has left her service, during which time she may take means to protect herself against unfair competition; and six months after the decree is signed herein would seem to be such a reasonable time under all the circumstances of this case.

Without going into any of the other matters urged in argument, but merely upon what I regard as law applicable the practically undisputed facts in evidence, I will sign a decree enjoining the defendants from soliciting trade until after six months from this date from the old customers of the plaintiff upon the "route" of the defendant, Oertel. After that time has elapsed the defendants will be permitted to canvass even among these customers.

The defendants should be charged with the costs.

In reaching the above conclusions the authorities cited by the plaintiff's counsel have been of great assistance to me, particularly

Smith vs. Kernan, 5 Law Bulletin, 145.

Robb vs. Green, L. R. 2 Q. B. Div. 315, Series of 1895; Merryweather vs. Moore, L. R. 2 Ch. Div. 521 (1892); Lamb vs. Evans, L. R. 3 Ch. Div. 462 (1892); Ninins on Unfair Competition, pp. 10, 11, 19, 432, 433, 438.